IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

YESENIA RODRIGUEZ
Plaintiff

vs

MANPOWER
TNT LOGISTICS, INC.
CARLOS ORTIZ
CARLOS JIMENEZ
HEWLETT PACKARD
BRENDA PEREZ

Defendants

CIVIL 04-2199CCC

## OPINION AND ORDER

The action before us is filed pursuant to Title I of the Americans with Disabilities Act, 42 U.S.C.§12101, et. seq., and Puerto Rico law. Plaintiff Yesenia Rodríguez who began her employment relationship with defendant Manpower in June, 2003, [complaint, at ¶15] alleges that she was discharged from an assignment due to her HIV-positive status. Plaintiff's first assignments were working with Hewlett Packard (HP) for two months. [Id.] She was later offered an assignment with defendant TNT Logistics (TNT), which was located at the HP facilities. Plaintiff accepted the offer and began working with TNT on October 1, 2003. [Id.] Rodríguez, who has been HIV positive since April 2003 avers that she never mentioned her medical condition to HP, TNT, or Manpower [Id., at¶17]. She alleges, nonetheless, that she was dismissed by defendants on February 27, 2004 because of her condition, in violation of her protected rights under the ADA.

The action is now before us on Manpower and TNT's Motions for Summary Judgment (**docket entries 37 and 56,**[1] respectively) and plaintiff's oppositions **(docket entries 43 and 62)**. Defendant TNT contends that it had no knowledge of Rodríguez' HIV status and did

---

[1]Manpower filed an additional memorandum supplementing the record in support of its motion for summary judgment (docket entry 76).

CIVIL 04-2199CCC                                              2

not offer her another contract because of her frequent absences. Manpower, which also claims not to have had knowledge of Rodríguez' condition, additionally challenges plaintiff's characterization as disabled under the ADA as well as raising her failure to notify her absences to one of its representatives, as required by the agency.

The uncontroverted facts of this case are as follows:

Plaintiff had one-month temporary service assignments with TNT beginning on October 1, 2003. Both of her supervisors, co-defendants Carlos Jiménez Rivera and Carlos Ortiz, were very satisfied with the quality of her work. By her own admission, she never discussed her HIV status or her medication with anyone at work except once when she mentioned the name of her medication with no further discussion about it to the nurse in HP's infirmary. The incident is described below:

As part of the medical treatment for her condition, plaintiff took Crixivan, a medication that caused stomach pain and dizziness. [Complaint, at ¶18.] Her dosage of this medication was increased on January 25, 2004. [Id.] On Thursday, February 26, 2004, at the end of her shift, plaintiff was not feeling well. Ortiz, who was her supervisor at that time, accompanied her to the infirmary on the premises. [Id., at ¶19.] He waited outside while she was checked by the nurse. No one else was present during plaintiff's conversation with the HP nurse. Plaintiff's deposition, p.101. Plaintiff's blood pressure was found to be high. After she explained to the company nurse, Brenda Pérez, that it was a side effect of her medication, the nurse asked her the name of the medicine. Plaintiff told her it was Crixivan. Crixivan is a drug used only for treating HIV. Pérez stated at her deposition that she did not know what Crixivan was and did not investigate or consider the matter further, because plaintiff felt better and was well enough to drive home. As far as Pérez was concerned, the matter was closed.

The next day, Friday, February 27, 2004, would have been her last regular work day under that contract. Plaintiff stayed home that day, however, because she was in a lot of pain and feeling terrible. During the day she spoke with Rebecca Rivera, a Manpower employee, who

CIVIL 04-2199CCC                                              3

told her that she was fired from TNT. When plaintiff asked why, at first Rivera said that she did not know. Later she said that it was due to Rodríguez' absenteeism.

**Defendants' Evidence**

With regard to Rodríguez' absenteeism, Ortiz stated in his unsworn declaration under penalty of perjury that six of plaintiff's seventeen absences occurred in the last two months that she was with TNT (docket entry 57, Exhibit 3 ¶6). Ortiz was concerned about this high absenteeism, which was communicated to Manpower by TNT's Human Resource Director, Héctor Rosado. After discussing plaintiff's absences in February, 2004, TNT requested that Manpower not renew Rodríguez' contract to work for TNT (Id., ¶7). Ortiz stated that this conversation took place and the decision was made before he accompanied plaintiff to the HP infirmary on February 26, 2004. Ortiz also stated that neither Pérez nor Rodríguez informed him of plaintiff's HIV positive status.

An excerpt from the deposition of her prior supervisor, Jiménez-Rivera, who testified that he supervised her until December 23, 2003, also reflects that he had no complaints about her work and took no part in the decision not to offer her another contract. We note, however, that the quality of her work has not been raised as a reason for her not being offered another contract with TNT and is not a relevant issue in this action. While plaintiff points to Ortiz' positive comments about the quality of her work, she does not refute his statement that she had been absent seventeen (17) times in the time period she had worked for TNT. Ortiz' deposition, at 10.

The Unsworn Declaration Under Penalty of Perjury made by Jiménez-Rivera (docket entry 57, Exhibit 5) clarifies at ¶¶3 and 4 that:

> TNT Logistics used personnel referred by the temporary employment agency Manpower. This personnel was subject to the rules and regulations of Manpower,

CIVIL 04-2199CCC                                            4

>   their employer.... Yesenia Rodríguez was [a] temporary employee that had successive one-month contracts with Manpower from October 1, 2003 to February 29, 2004 to work for TNT Logistics at the Hewlett-Packard Facilities.[2]

In her declaration under penalty of perjury, TNT's Ex. F, HP nurse Brenda Pérez stated that Rodríguez did not inform her that she was HIV positive and that Pérez did not know for what condition Crixivan was prescribed. Pérez testified that she did not disclose to Carlos Ortiz any medical information regarding what occurred during Ms. Rodríguez' visit to the infirmary, or disclose to him the fact that Ms. Rodríguez had stated that she was taking medication. She also did not tell any other TNT employee about plaintiff's visit to the infirmary nor which medication she was taking or anyone at Manpower about the contents of their conversation.

The evidence reflects that plaintiff's employment agreement with Manpower, which she signed and wherein she stated she understood, included the following:

>   I understand the term of my employment with the company shall be limited to the duration of any temporary assignment which I accept.... I certify that I am applying for temporary work with the company and I understand that the company's customers do not seek permanent help from the company.

Plaintiff's deposition, at 65-66.

Rodríguez stated that she understood that Manpower was a temporary agency, that she was applying for jobs that were short term assignments, and that she was not guaranteed a particular assignment. Id., at 66-68. She further understood that during periods when she was not working, she had to contact Manpower and notify it that she was interested in additional assignments. Id., at 68. Plaintiff reluctantly admitted that she thought she understood Manpower's policy regarding harassment and discrimination based on disability, but acknowledged that she never reported any type of discrimination based on her alleged disability

---

[2] The depositions of both Ortiz (Ex. C) and Jiménez-Rivera (Ex. E) reflect the same information provided in their unsworn statements under penalty of perjury.

CIVIL 04-2199CCC                                              5

to either TNT or Manpower.[3] Id., at 70-73. Perhaps most important is the fact that Rodríguez acknowledged that each time she was going to work the following month she had to sign a new employment agreement, and that she was not given a new agreement for March, 2004 during the preceding month of February. Id., at 71-83, 91-92.

Rodríguez admitted that she never called Manpower for a new assignment after February 27, 2004; that no one ever told her not to apply for future assignments; that she is able to have other assignments, but "ha[s] no plans on touching Manpower again." Id., at 126-128. She recognized that she would be eligible for additional assignments because she is capable and a good worker. Id., at 128.

**Plaintiffs' Evidence**

To support what she contends are relevant issues of material fact which make summary judgment inappropriate, plaintiff relies on her own deposition, her statement under penalty of perjury, and the statements contained in the defendants' depositions:

Rodríguez avers that on February 26, 2004, when she gave the name of the medicine–Crixivan–to the nurse, Pérez "looked at me, like with fear, . . . as if [plaintiff] were going to give her something." Plaintiff's deposition, at101-02, 105-06. With regard to nurse Pérez' knowledge of plaintiff's HIV positive status, her only support for the averment is that Pérez had to know that Crixivan was used for HIV because she is a nurse. Id., at103-104. Plaintiff acknowledged that she has no direct evidence that Brenda Pérez ever told anyone at either Manpower or TNT that she was HIV positive or taking Crixivan. Id., 106.

She also relies on the fact that Pérez testified that she learned that Crixivan was used as an anti-retroviral medicine for HIV patients by looking in the Physicians Desk Reference (PDR),

---

[3] After extensive questioning plaintiff finally acknowledged that, at Manpower's initial talk to the group of new employees, they were told that they had to notify one of the agency representatives if they planned to be absent. Id., at 196-198.

CIVIL 04-2199CCC                                             6

a book that she had in the Infirmary. Plaintiff's characterization, however, is incomplete and misstates the truth of the matter: Pérez testified at her deposition, at page 12, that she did not look up the medication in the PDR to learn about its use until after she was sued.

In her opposition to defendant's statement of material facts, docket entry 62 at ¶15, Rodríguez heavily relies on the fact that

> . . . the temporal bracketing between plaintiff's visit to the infirmary and the time her contract was cancelled constitutes fairly strong circumstantial evidence which, when combined with the other evidence of record, like the knowledge Manpower had regarding plaintiff's visit to the infirmary suffices to raise a reasonable inference that the real reason behind her termination of contract was her HIV positive condition.

Notwithstanding that Friday, February 27, 2004 was the last day plaintiff was supposed to have worked under the current contract, which ended two days later, she considers it a termination of her contract because her conversation with Rivera occurred two days before the end of the month.

Plaintiff considers her conversation with Manpower's Rivera to be significant. Rodríguez gives three different versions: First, that Rivera asked plaintiff whether Rodríguez had been to the infirmary the day before because she had been told that plaintiff was not feeling well. Plaintiff's deposition at pp. 94, 115-116; see, also, plaintiff's declaration under penalty of perjury, ¶17. Second, that Rivera had asked plaintiff how she was feeling because she sounded terrible. Plaintiff replied that she was feeling terrible–that she was bedridden. The conversation then turned to the job termination, her supervisor, and about coming in to sign some documents. Plaintiff's deposition, at pp. 112-114. In the third version, plaintiff contends that Rivera had prior knowledge that Rodríguez had been to the infirmary the day before. Plaintiff, however, did not mention any comment in the conversation about the infirmary until prompted to do so by her attorney.

Although plaintiff gives importance to Rivera's initial uncertainty about the reason for the discharge, Rivera's reluctance to give her a letter explaining the discharge by TNT and her

CIVIL 04-2199CCC                                         7

statement as to the fact that, if plaintiff wanted to get unemployment compensation, she would have to say that the work had ended, id., at 121-122, it is unclear what inferences Rodríguez would have us draw that would create a material issue of relevant fact.

As we note above, plaintiff also stated in her deposition that she never informed any one at Manpower or TNT, at any point in time, that she was taking Crixivan. Id., at 96. She admitted that as of the date of the deposition she did not know whether nurse Pérez told supervisor Ortiz, Manpower or any of its representatives that she was taking Crixivan. Id., at 185. She stated that, "I don't know whether [Pérez] said it, but her attitude and the attitude [sic] that they decided to fire me is what implies that she did." Id. She referred back to the fact that she did not know that Brenda Pérez informed anyone about her use of Crixivan. In plaintiff's mind the temporal sequence of events created a causal connection: Pérez must have told the supervisors "because they fired me the next day." Id., at 125, 200.

Supplementing and joining TNT's theory of the absence of discrimination and lack of knowledge of her condition, Manpower raises the additional theory that Rodríguez is not disabled under the ADA. Manpower provides evidence in support of this theory that reflects the following uncontroverted facts:

When asked by Manpower about her alleged disabilities arising from her HIV positive status, plaintiff stated that if she is healthy, her condition does not affect her ability to care for herself. Neither does it affect her abilities to perform manual tasks, to walk, to see, to hear, to speak, to breath or to learn. Plaintiff's deposition, at 44-45. When she is not sick, it does not affect her ability to work. Id., at 45. No doctor indicated that she needed to quit her job. Id., at 58. Although she is still able to have more children, Rodríguez believes it would be irresponsible because they could be born with the HIV condition. Id., at 45-46.

CIVIL 04-2199CCC                                        8

**Analysis**

To establish a prima-facie case for discrimination under the ADA, a plaintiff must be a qualified individual with a disability. The term disability under the ADA means: "(A) a physical impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. §12102(2). In determining whether an individual's HIV status qualifies as a disability under the first prong, we examine three factors: (1) whether the HIV infection is a physical impairment; (2) whether appellant relies on a particular major life activity under the ADA; and (3) whether the impairment substantially limits the major life activity. See Brandon v. Abbott 524 U.S. 624, 631(1998).

Reproduction is a major life activity. Sutton v. United Air Lines, Inc., 527U.S. 471, 479-80 (1999). Rodríguez' testimony that her decision not to have more children was based on the possibility of passing the medical condition to the child brings her within the protection of the ADA in that her status as HIV positive substantially limits this major life activity. Sutton v. United Air Lines, Inc., 527 U.S. 471, 479-80 (1999). Compare, Blanks v. Southwestern Bell Communications, Inc., 310 F.3d. 398,401 (5th Cir. 2002) (plaintiffs had previously decided not to have children and wife underwent procedure to prevent pregnancy). The matter before us, therefore, is whether there is a material issue of relevant fact regarding her HIV positive status as the cause of Rodríguez' employment termination from TNT and/or Manpower.

We are obliged to grant summary judgment where the record demonstrates that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). See, Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986). If no reasonable jury could find for the party opposing the motion, it must be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Telephone Company, Inc., 47 F.3d. 928, 930 (7th Cir. 1995).

CIVIL 04-2199CCC                                                       9

Conclusory allegations by the party opposing the motion cannot defeat the motion.  Id.  The non-movant must come forward with evidence of a genuine factual dispute.  Celotex, supra, at 322-23.

Plaintiff's purported evidence of a causal connection between her HIV-positive status and Manpower's failure to give her a new assignment at TNT is based purely on conjecture and suspicion.  Rodríguez repeatedly emphasizes that at no time did she tell anyone at either TNT or Manpower that she was HIV positive or that she was taking Crixivan.  She even stated that the only persons who knew of her condition were her husband, parents, and two of her three siblings.  While she did tell HP's nurse Brenda Pérez that she was taking the medication, only because she had stated that her dizziness and high blood pressure were side effects, plaintiff gave no explanation as to what the medication was prescribed for.  She speculates that Pérez knew that Crixivan was an HIV medication because Pérez "gave [her] a strange look, like with fear, as if [plaintiff] was going to give her something," and "That she's a nurse.  She has to know."

Plaintiff's evidence follows a circular route of speculation:  Nurse Pérez must have known what Crixivan is for because she is a nurse.  Nurse Pérez must have told someone at TNT, who must have told someone at Manpower, because the next day Rebecca Rivera called her regarding the termination of the assignment at Manpower.  A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment. Fed.R.Civ.P. 56(c).  Yarborough v. Devilbiss Air Power, Inc., 321 F.3d. 728, 729(8th Cir. 2003).

Far from rebutting defendants' evidence, plaintiff admitted that in the past she had always been given a contract to sign for the next assignment with TNT and that in February, 2004, she was not offered a contract to sign for March, 2004.  Additionally, she stated that she was never told that she could not ask for other assignments through Manpower; rather she does not want to deal with the agency.  When asked about the specific dates of her absences over her various assignments at TNT she could not remember but emphasized that her absences had been for good reasons and that her excuses had been accepted.  Rodríguez never challenged TNT's

CIVIL 04-2199CCC                              10

evidence regarding the number of her absences.  Manpower also raised the fact that Rodríguez admitted that she had been told at the "chat" at the beginning of her relationship with Manpower that she had to notify one of its representatives when she was going to be absent.  Rodríguez acknowledged that she only notified her TNT supervisor.

       The Rodríguez' statement, like her deposition testimony, reflects only her subjective speculation and suspicion that the failure to receive another assignment at TNT resulted from her HIV positive status and is based solely on the sequence of events.  Compare, Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 Fed 46, 53 (1st Cir. 2000)( court held that a self-serving affidavit could defeat summary judgment if the affidavit contains more than the allegations made in the complaint and provides specific factual information based upon personal knowledge).

       For the above-stated reasons we find that, although Rodríguez is a disabled individual within the definition of the ADA, she has presented no evidence that demonstrates that this could have been a reason for the non renewal of her contract and/or that rebuts the defendants' contention that she was not further assigned to TNT due to her absenteeism.  Accordingly, the Motions for Summary Judgment (**docket entries 37 and 56**) are GRANTED, and this action is DISMISSED.

       SO ORDERED.

       At San Juan, Puerto Rico, on September 21, 2006.

                                                     S/CARMEN CONSUELO CEREZO
                                                     United States District Judge